## NEGLIGENCE OF DEFENDANT WHERE OTHER AGENCIES OPERATED IN CONNECTION THEREWITH.

Circuit Court of Cuyahoga County.

### THE SMEED BOX COMPANY v. ELIZABETH LAWSON AND THE CLEVELAND RAILWAY COMPANY.

Decided, November 18, 1912.

*Trials—Torts—Amendments to Make Petition Conform to Proof—Recovery may be had Against One where Two are Sued for Joint Tort—Defendant Liable for Negligence Though Other Causes Contribute to the Injury.*

1. The allowing of amendments to a petition to make it conform to the proof rests in the sound discretion of the court, and, where it does not appear that the defendant was taken by surprise, or that he was unprepared to meet the issue tendered by the amendment, he is not prejudiced thereby.
2. Where two or more are sued and a joint tort is alleged, a recovery may be had against one of the defendants only.
3. An action for injuries resulting from defendant's negligence is not defeated by the fact that other agencies operated in concurrence with defendant's negligence to put the forces in motion which resulted in plaintiff's injuries.

*Guthery & Guthery,* for plaintiff in error.
*H. F. Payer* and *Squire, Sanders & Dempsey.* contra.

MARVIN, J.; WINCH, J., and NIMAN, J., concur.

Elizabeth Lawson brought suit against the Smeed Box Company and the Cleveland Railway Company, and recovered a judgment against the Smeed Box Company. The railway company was dismissed from the case by order of the trial court, and no claim of error is made here because of such order, as between Elizabeth Lawson, who will be spoken of in this opinion as "the plaintiff" and the Smeed Box Company, which will be spoken of as "the defendant."

The action was brought to recover for injuries which the plaintiff claimed to have received on the 5th day of June, 1911, while she was riding as a passenger on a car of the Cleveland Railway Company, a corporation, in the city of Cleveland.

In her petition she says that the defendant, the Smeed Box Company, is a corporation, and she charges, as against it, that one of its delivery wagons was in charge of one of its servants, who negligently drove the horse attached to said wagon in suchwise that it collided with the car in which she was riding, breaking in the side of the car at her back and thereby causing serious injury and great pain to her.

To this petition the defendant answered admitting that the railway company operated cars in the city of Cleveland, and that on the 5th day of June, 1911, one of its wagons, in charge of one of its servants, was being driven in the prosecution of its business, upon the streets of the city of Cleveland; that it is a corporation and that the Cleveland Railway Company is a corporation, and denying every other allegation of the petition.

In this state of the pleadings the case went to trial and it was shown that on the day named there was a collision between the wagon of the defendant and a car of the railway company on Prospect avenue, in the city of Cleveland; that the plaintiff was a passenger on such car at the time of the collision; that the force of the collision was such that the side of the car, immediately at plaintiff's back, was crushed in to some extent and the windows broken; that the seats of the car ran lengthwise along the side of the car, so that plaintiff's back was against the side of the car.

It was admitted by the defendant that Prospect avenue, at the place where this collision occurred, is a down-town section of

the city and is much used and traveled, a busy section of the city. The evidence certainly tended to show that the plaintiff was injured by this collision; indeed, there could be no doubt from the evidence that she was injured to some extent, at least.

The driver of the horse testified that he was driving to the west; that his wagon for the carrying of boxes had sides extending out in a slanting manner above the wheels and beyond the wheels; that the sides extended out between two and three feet; that it was about twenty feet long; that the distance between the wagon and the car, if they had met while his wheels were in the track, would have been 6.9 inches.

The car was going to the east, not traveling fast; that he was driving to the west with the wheels of his wagon in the north track of the street railway company. There were automobiles and other vehicles in the street at the sides. As he was approaching the car, which was coming toward him from the west, his horse shied or jumped toward the south, that is, toward the track on which the car was approaching him, thereby taking his wheels out of the car track and causing the collision.

Being asked to tell just what happened when the horse jumped, he says:

"Well, no more than the exhaust came out of that automobile then he jumped into that car."

On cross-examination he said that the automobile, of which he spoke, was twenty or thirty feet away, and when they started to crank it the horse jumped over towards the street car. Then this cross-examination continued in these words:

"Q. You mean a lot of smoke came up behind the car? A. Yes.

"Q. Was there any noise? A. Just like a bullet some of them cars make.

"Q. Was it as loud as a shot gun? A. It couldn't have been quite that loud.

"Q. But there was a loud report when the auto started up? A. Yes.

"Q. But there was a cloud of blue smoke came up when the auto started? A. It went down, it didn't go up."

He says, further, he was driving toward the auto and it was standing at the curb. Clearly what he meant is that the auto was·at the curb and was further west than he was.

Attention is called to this evidence, because it is urged that from this it clearly appears that the proximate cause of the accident was this noise made by the auto, and that if such is the case, the defendant can not be held liable, even if there were negligence on its part. Something will be said on this point later in this opinion.

During the introduction of the plaintiff's evidence in chief questions were asked by counsel for plaintiff as to what the characteristics of the horse, driven by defendant's servant at the time of the accident was, as to being accustomed to shy and scare at things in the street. These questions were permitted to be answered over the objection of the defendant. At this time there was no allegation in the petition as to such characteristics of the horse. In answer to these questions answers were given tending to show that the horse was what is called "scary," easily frightened and likely to shy and jump at objects frequently met with in the city streets; that in addition to being "scary" there were sores on his back and shoulders, tending to irritate him and make him more untractable than he otherwise would have been.

At the close of the plaintiff's evidence she was allowed, over the objection of the defendant, to file an amended petition instanter. This amendment added to the original charge of negligence the following:

"That the said the Smeed Box Company recklessly and negligently provided for its said employee a horse aforesaid that was vicious, unmanageable, ungovernable, uncontrollable, and liable to shy in the presence of automobiles, papers and objects of whatsoever description."

The defendant then asked leave to refile the original answer, which leave was granted. The defendant then moved the court to direct a verdict in its favor, which was overruled and the defendant, without any suggestion of being taken by surprise by the admission of the evidence as to the horse, or as to the case

made in the amended petition, proceeded to introduce evidence on its part.

The action of the court in allowing the amendment is fully justified by Section 11363, General Code, which provides that the court may, before or after judgment, allow a pleading to be amended conforming the pleading to the facts proved. The allowing of amendments to pleadings is in the sound discretion of the court and where it does not appear that the defendant was taken by surprise or was unprepared to meet the issue tendered by an amendment, there can be no prejudice (*Traction Co.* v. *George,* 13 C.C.[N.S.], 209). On this subject generally see *Clark* v. *Clark,* 20 O. S., 128, and other cases cited in note to the code section above referred to.

Earlier in this opinion attention was called to the claim made by the defendant that if the plaintiff was injured from an act to which the noise made by the automobile directly contributed, there could be no recovery against the defendant in this action.

In support of this our attention is called to *Billman* v. *R. R. Co.,* 76 Indiana, 166. This case simply holds that a petition which states that where by the reckless and careless manner in which a locomotive and train of cars are handled, a team of horses is caused to run away and injure a party not connected with the team, the railway company is liable. To the same effect is *McDonald* v. *Snelling,* 96 Mass., 290.

There is no suggestion in any of the cases cited on this proposition that there may not be concurring negligence on the part of the owner of the team. Suppose a locomotive engineer carelessly and negligently sounds the whistle of his engine and thereby causes a horse to run away and injure an innocent onlooker, and suppose the horse which thus runs away was left standing unhitched near a railroad, where trains were likely to pass, can it be doubted that both the owner of the horse and the railroad company might be liable?

It is further urged that as the petition charged both the railway company and the defendant with negligence concurring to cause the injury, that no recovery could be had against one unless the negligence of both were established. In support of this attention is called to *Railway Co.* v. *Eggman,* 71 Ill. App., 42,

and *St. Louis, etc., Co.* v. *Hopkins,* 100 Ill. App., 567.   Both of these cases and other Illinois cases seem to support the proposition claimed.   The same proposition is stated in *Weist* v. *Traction Co.,* 200 Pa. St., 14, and in other Pennsylvania cases, the court citing the Illinois cases in support of the proposition.

This, however, is not the general rule.   *Cooley on Torts,* Vol. 1, page 156, says:

"Though two or more are sued and a joint tort alleged, the general rule is that a recovery may be had against one only, but a different rule is held in Pennsylvania."

It is sufficient to say that the rule in Ohio is that stated as the general rule by Cooley.   *Mead* v. *McGray,* 19 O. S., 55; *Reugler* v. *Lilly,* 26 O. S., 48.

The defendant requested the court to give in charge to the jury seven separate propositions.   There was no request, however, that any of these be given before the argument of the case.

Of these propositions the court refused the first four, and gave to the jury the remaining three.   For reasons given in the discussion of the last two questions, hereinbefore discussed, the court was justified in refusing the first four requests.

The charge as given, including the three propositions given at the defendant's request, submitted the case to the jury as favorably for the defendant as it was entitled to have it submitted. There was no error to the prejudice of the defendant in the charge as given, or in the refusal to charge as requested.   There was no error to the prejudice of the defendant in any admission or rejection of evidence, or in permitting the petition to be amended as hereinbefore set forth.

Within the time fixed by law the defendant filed its motion for a new trial, which was overruled.   One of the grounds for the motion raised the question of the sufficiency of the evidence.

We are of opinion that the jury might well have found that the defendant was negligent both in furnishing the horse and in the manner in which the driving was done.   Certainly it is a long way from being manifest that the jury came to a wrong conclusion as to the negligence of the defendant.   Happily this is one of the few negligence cases where the plaintiff is not charged with any negligence, either causing or contributing to

the injury which she received, nor do we think, under the evidence, the damages allowed were excessive.

Another ground stated in the motion for new trial was that of newly discovered evidence. In support of this ground, the affidavits of two medical men were filed, to-wit, Dr. Walter H. Rieger and Dr. W. F. Hribal, and affidavits of attorneys as to how defendant's counsel had learned of these witnesses and what they knew of the case.

On this ground of the motion, this may be said:

*First.* It appears that both medical men were passengers in that car with the plaintiff when she was injured, and it would seem as though, by diligence, their testimony might have been produced at the trial.

*Second.* It nowhere appears that the affidavits attached to the bill constitute all the evidence offered on the motion.

*Third.* The statements made in the affidavits of the medical men are not sufficient to sustain the motion.

This motion was properly overruled, and the judgment is affirmed.