### Richard Guthmann Transfer Company v. James McGuire.

### Gen. No. 13,547.

1. NEGLIGENCE—*what establishes prima facie case of.* In an action for personal injuries alleged to have been sustained by being run over by a vehicle of the defendant, a *prima facie* case of negligence is established by showing the violation of an ordinance consisting in driving a team at a prohibited rate of speed.

2. CONTRIBUTORY NEGLIGENCE—*when question of, for jury.* In an action to recover for personal injuries sustained by an infant of about seven years, by being run over by a vehicle of the defendant, it is a question for the jury to determine whether or not such infant was at the time of the injury complained of in the exercise of ordinary care.

3. INSTRUCTION—*when cannot be complained of.* An instruction cannot be complained of where it contains a vice like that contained in an instruction given at the instance of the complaining party.

4. JURY TRIAL—*what question upon examination of talesmen improper.* *Held,* that it was proper to refuse to permit the answering of a question put to talesmen as follows: "I will ask you, if, after hearing the evidence in this case and the instructions of the court, and you should have retired to your jury room, and you should

find there that some of the jurors did not agree with you, would that fact, of itself, influence you in changing your opinion?"

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. BEN M. SMITH, Judge, presiding. Heard in this court at the March term, 1907. Affirmed. Opinion filed December 23, 1907.

**Statement by the Court.**   James McGuire, the appellee, a minor, was run over by appellant's wagon and team April 22, 1905, at the intersection of Chicago avenue and Orleans street in the city of Chicago.   At the time of the accident he was seven years and four months, lacking two weeks, of age, and brought this suit against appellant, whose employe was driving the team, claiming that the accident was caused by the negligence of the driver.

No question is raised by counsel in respect to the pleadings.   The jury found appellant guilty and assessed appellee's damages at the sum of $3,000, and the court overruled appellant's motion for a new trial and rendered judgment on the verdict.

Chicago avenue is an east and west street and is 100 feet wide from building line to building line.   The sidewalk on each side of the street is eighteen feet wide.   There are two street car tracks in the street. The north rail of the north track is eighteen feet from the north curb, and the south rail of the south track is the same distance from the south curb.   Orleans street lies north and south and intersects Chicago avenue at a right angle.   The width of the street does not appear from the evidence.   There are two street car tracks in it south of Chicago avenue.   The west track turns west on a curve into Chicago avenue; the east track continues across Chicago avenue and north of that street.   The distance from the east rail of the east track in Orleans street to the curb line of the east sidewalk is fourteen feet.   Appellee's witnesses fix the time of the accident at from 7:30 to 8 o'clock P. M. Appellant's driver fixes it between eight and nine

o'clock P. M. The body of the wagon in question was forty feet long, and the wagon and tongue together about fifty feet in length. The bed of the wagon was four feet from the ground. It was empty and was being driven to a theater for a load of theater scenery. There were two horses hitched to it. The team was driven north on the east street car track in Orleans street, and as it approached Chicago avenue there was a street car behind it on the same track, the bell of which was ringing as a signal to the driver of the wagon to clear the track for the street car. The driver turned out of the track at Chicago avenue, or a little south of it, and the car went on. Appellee's witnesses testified that appellee came from the west side of the street, about on a line with the north sidewalk of Chicago avenue, and passed in front of the street car, and that when he passed the car the horses or pole of the wagon, which, in the meantime, had been driven up alongside the car, struck him. He fell, and the two left or west wheels of the wagon passed over him and injured him.

W. B. MOAK, for appellant.

BRANDT & HOFFMANN, for appellee; OSCAR C. MILLER, of counsel.

MR. JUSTICE ADAMS delivered the opinion of the court.

Appellant's counsel contends that the verdict is contrary to the weight of the evidence. Section 1259 of an ordinance of the city of Chicago, put in evidence by appellee, is as follows: "No person shall ride or drive any horse or horses, or other animals, in the city of Chicago, with greater speed than at the rate of six miles an hour, under a penalty of not more than ten dollars for each offense." Five witnesses called by appellee testified variously as to the speed of the wagon per hour; one six to eight miles, three eight or nine

miles, and one nine or ten miles; and one witness, not testifying as to the rate of speed per hour, said the horses were on a fast trot, and so continued till they crossed Chicago avenue. Some of these witnesses were on the northeast corner of the intersection, and some of them on the northwest corner, and two of them were in Chicago avenue east of the street car track, waiting to take the north-bound street car at Chicago avenue, so that they all had a good opportunity to observe the motion of the wagon and horses. Only one witness, the driver of the team, testified as to the rate of speed on behalf of appellant, and he testified that the horses were walking at the time of the accident. He also testified that the boy ran from the east side of the street and fell under the pole of the wagon—thus contradicting all of appellee's witnesses who saw the accident. The driver saw the boy fall, yet the evidence for appellee tends to prove that the team went fifty feet or more before it stopped. We think the clear preponderance of the evidence is with appellee as to the speed of the team. The violation of the ordinance in driving the team at a prohibited rate of speed is *prima facie* proof of negligence on the part of the driver. Commonwealth Elec. Co. v. Rose, 214 Ill. 545, 560; Ward v. Meredith, 122 Ill. App. 159, 161.

Appellant's counsel further contends that appellee did not exercise ordinary care, but was guilty of negligence which contributed to the accident. The evidence is that it was dark at the time of the accident, and the wagon being at the side of the car when the boy started across the street from its west side, he was not in a position to observe the wagon; besides, under the circumstances, his attention would naturally have been directed to the car in front of which he was attempting to cross the street. In view of these circumstances and his tender age, not quite seven years and four months, we think it was a question for the jury whether he exercised ordinary care, and also whether the rate of speed at which the team was being

driven was the proximate cause of the accident. We think it apparent from the evidence that had the team not been driven at the rate of speed testified to by appellee's witnesses, the accident would not have occurred. The court, at appellant's request, properly submitted to the jury, by instructions, the question whether appellee was guilty of contributory negligence which caused the accident. Independently of the ordinance, it was the driver's duty to exercise a greater degree of care at street intersections than at other places on his route. Chicago C'y R'y Co. v. Tuohy, 196 Ill. 410, 413, and cases cited.

Appellee's second instruction is objected to by appellant's counsel. It is as follows:

"The jury are instructed that the rule as to contributory negligence of a child is that a child is required to exercise only that degree of care which a child of his age, intelligence, capacity, discretion and experience would naturally and ordinarily use in the same situation and under the same circumstances."

The objection is that there is no evidence of the intelligence, capacity, discretion or experience of appellee. At appellant's request the court gave an instruction containing this language:

"Although you may believe from the evidence that the plaintiff in this case was a child, still, if you believe from the evidence that he was of sufficient age to understand and appreciate danger, and that with such understanding and appreciation of the situation he ran from any direction toward or against the horses or wagon of the defendant, and that the defendant's driver, at the time, was exercising ordinary and reasonable care in the management of said team and wagon, and that the injury to the plaintiff was occasioned solely by his own act, and not through the negligence of the defendant's driver, then the jury will find the defendant not guilty."

By this instruction the jury were informed that they might infer appellee's capacity to understand and appreciate danger from his age, and, aside from proof of his age, there is no evidence of his capacity. We

think that appellant, by asking this instruction, is estopped from objecting to appellee's second instruction. But, if we are wrong in this, we hold that the giving of said second instruction was not reversible error. We find no error in any other of the instructions objected to by appellant's counsel. In the empaneling of the jury, counsel for appellant asked eight of the jurors this question: "I will ask you if, after hearing the evidence in this case and the instructions of the court, and you should have retired to your jury room, and you should find there that some of the jurors did not agree with you, would that fact, of itself, influence you in changing your opinion?" The question put to the different jurors varied slightly in phraseology, but was in substance as stated. The court ruled against the question. The question, notwithstanding the use of the words "of itself," is inherently vicious. The only possible object of the question was, as we think, to produce a disagreement of the jury, in the event that they should not agree to a verdict for the defendant, by causing each juror to pledge himself on oath to abide by his opinion, however hastily or erroneously formed, and to disregard the opinions of his fellow-jurors. The tendency of the question, if answered affirmatively, was to encourage a disagreement of the jury, and the court properly excluded it. City of Evanston v. Richards, 224 Ill. 444, 448. An instruction to the jury that no one of them should be influenced to change his opinion merely because others of the jury differed with him, would be erroneous, and if so, the question put to the jurors by appellant's counsel, which evidently sought an affirmative answer, was improper. The testimony of Doctor Lambden, who examined appellee, is that he was seriously and permanently injured, and appellant introduced no evidence to the contrary. We do not think the damages excessive.

We find no substantial error in the record, and the judgment will be affirmed.

*Affirmed.*